193 N.J. Super. 560 (1984)
475 A.2d 97
STATE OF NEW JERSEY, PLAINTIFF,
v.
ROBERT F. EVANS, T/A BOB EVANS, INC., DEFENDANT.
Superior Court of New Jersey, Law Division.
January 18, 1984.
*562 James Ronca, Assistant Prosecutor for plaintiff (Stephen G. Raymond, Prosecutor for Burlington County, attorney).
George H. Hulse, for defendant (Hulse & Germano, attorneys).
HAINES, A.J.S.C.
In this case, defendant moved for dismissal of indictments against him, relying upon the summary judgment procedure described in State v. Hegyi, 185 N.J. Super. 229 (Law Div. 1982). The prosecutor, arguing against the motion, relied upon State v. Brown, 188 N.J. Super. 656 (Law Div. 1983), which concluded that no summary judgment procedure was available to a defendant in a criminal action. He requested a reconsideration of Hegyi in the light of Brown. This court, not being persuaded by the reasoning in Brown, entertained the motion but held that a genuine issue of fact existed requiring its denial. This opinion examines Brown and sets forth the court's reasons for its disagreement with the conclusions there.

*563 A. The Use of "May"; Summary Judgment in Discretionary Matters
N.J.S.A. 2C:2-11, the so-called de minimis statute, provides in full as follows:
The assignment judge may dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the defendant's conduct:
a. Was within a customary license or tolerance, neither expressly negated by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;
b. Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
c. Presents such other extenuations that it cannot reasonably be regarded as envisaged by the Legislature in forbidding the offense. The assignment judge shall not dismiss a prosecution under this section without giving the prosecutor notice and an opportunity to be heard. The prosecutor shall have a right to appeal any such dismissal.
Hegyi held that the summary judgment motion was authorized by paragraph (b) of the statute:
It provides that the prosecution must be dismissed if the defendant's conduct `[d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense....' This language invites a factual analysis. Here, for example, if the facts do not show that the defendant submitted false reports or tampered with witnesses or fabricated physical evidence, it could not be said that his conduct caused or threatened the harm or evil which the law sought to prevent. [185 N.J. Super. at 232]
Brown points to the opening language of the statute, namely that the "assignment judge may dismiss a prosecution" (emphasis supplied), stressing the fact that dismissal is discretionary. The opinion then states that "[the] discretion to grant or deny is the antithesis of the function of a judge in deciding a motion for summary judgment." Brown therefore disagrees with Hegyi's statement that the court "must dismiss" (emphasis supplied), if the prosecutor has no facts with which to support the indictment and concludes that the use of the summary judgment procedure was not intended by the Legislature. There are two answers to this argument: (1) the use of the word "may" does not always invite discretionary action and *564 should not be so read here; and (2) the existence of discretion does not prevent use of the summary judgment procedure.
Whether the use of the word "may" in a statute indicates discretion is a question of intent. In Harvey v. Essex Co., 30 N.J. 381, 391 (1959), our Supreme Court held that "may" is mandatory when that reading is dictated by policy, reason, the need for public protection and a clear inference, taken from the nature and object of the statute, that mandatory significance was intended. Those tests are met here. Policy and reason strongly support the use of a procedure which avoids the unfair and costly criminal trial of a defendant against whom the State has insufficient evidence to convict. Innocence, not guilt, is the presumption in our free society. The public is not protected when there is no recourse against prosecution of the innocent. The summary judgment procedure provides that recourse. The nature of the statute is remedial, as reflected in its language: the prosecution may be dismissed when an assignment judge "finds that the defendant's conduct ... [d]id not actually cause or threaten the harm or evil sought to be prevented...." Its object is the fair and speedy disposition of charges when such findings are reached. A discretionary reading of the quoted language would permit a denial of the dismissal remedy, notwithstanding the innocence of defendant. It would permit the trial of empty charges, denying a fair and speedy disposition. The clear inference, from the nature and object of the statute, is that mandatory significance was the intent of the Legislature.
Were the contrary true, i.e., if "may" were to be read as a word of discretion, it does not follow that the summary judgment procedure is unavailable. R. 4:46, the summary judgment rule, does not so provide. Instead, it states that:
[t]he judgment or order shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to the judgment or order as a matter of law.
*565 The rule also provides that "[a] summary judgment or order, interlocutory in character, may be rendered on any issue in the action...." (Emphasis supplied) And, again: "a summary judgment final in character may be rendered in respect of any portion of the damages claimed." (Emphasis supplied). Thus, use of the word "may" in the very rule under discussion, even if read in the discretionary sense, does not deny the right of a court to render a summary judgment.
Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954), the leading case on summary judgment motions, does not suggest a discretionary restriction and there is no reason to invent one. Judicial discretion is never unlimited. It "connotes conscientious judgment, not arbitrary action; it takes into account the law and the particular circumstances of the case before the court." Higgins v. Polk, 14 N.J. 490, 493 (1954). "The exercise of discretion implies conscientious judgment taking into account the law and the particular circumstances of the case and is directed by reason and conscience of the judge to a just result." Sokol v. Liebstein, 9 N.J. 93, 99 (1952). An abuse of discretion is reversible error. In re Presentment by Camden Co. Grand Jury, 34 N.J. 378 (1961).
When no genuine issue of material fact exists, when fact and law point clearly to the correct response, a judge, though exercising judicial discretion, must give that response. If he does not, his action is arbitrary. An illustration is provided by the hypothetical situation posited in Hegyi:
X is charged with murder; the facts indicate that the crime was committed by Y; no fact connects the crime to X.
If X moves for summary judgment dismissing the charges against him, he should be successful. Denial of the motion would be an abuse of discretion. No fact supports the charge. No law permits a prosecution without facts in its favor.

B. The Limitation of the Statute to Trivial Matters
Brown suggests that the statute is directed only at "trivial offenses or absurd applications." 188 N.J. Super. at *566 671. Patently, this is not so. The statute requires dismissal of serious offenses, e.g., a murder indictment, if defendant's conduct "did not actually cause or threaten the harm or evil sought to be prevented by the law defining the defense." The dismissal of trivial charges is an alternative proviso. Use of the word "or" in subparagraph b clearly so indicates. That subparagraph provides for a dismissal, if defendant's conduct
[d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation and conviction.... [emphasis supplied]

C. The Limiting Effect of the Indictment
Brown concludes that the opening paragraph of the statute limits the assignment judge to a consideration of the "conduct charged ... and the nature of the attendant circumstances." Id. at 674; emphasis supplied. It is therefore said that defendant may not advance any facts which are contrary to the conduct charged in the indictment.
That narrow reading distorts the actual language of the statute, which reads:
The assignment judge may dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the defendant's conduct... did not actually cause or threaten the harm or evil sought to be prevented....
Thus, the assignment judge is permitted to consider "attendant circumstances," i.e., facts surrounding the charge and not necessarily set forth in the indictment. Further, he is permitted to find that the conduct did not cause harm. This language does not restrict the defendant's evidence; on the contrary, it invites a full exposition of the facts.

D. The Defendant's Better Remedy
It is argued that defendant has a better remedy than that provided by the summary judgment procedure. He can move to dismiss the charge if the grand jury record shows no basis for the indictment. Id. at 672. The existence of the right to a dismissal, even if "better," does not dictate the absence of *567 a summary judgment remedy. Furthermore, it is the summary judgment remedy which may be "better" in a given situation. Assume, for example, that grand jury testimony providing the only basis for conviction is false and known by the prosecutor to be false. A summary judgment motion for dismissal requires him to make a choice. He may present only the grand jury record to the court, thus creating a factual dispute and defeating the motion, or he may present the truth and lose the motion. This choice, in fact, is not a choice. The prosecutor is obligated, legally and ethically, not to pursue the innocent. He is an officer of the court, obligated to present the truth, not the opposite.
In State v. Orecchio, 16 N.J. 125 (1954), the Court said:
The prosecuting attorney's primary function is not to convict but to see that justice is done, and ... his duty is as much to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. [at 140]
In addition, he is obliged to provide defendant with exculpatory evidence in the possession of the State. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Consequently, in the suggested circumstances, the summary judgment motion would succeed when the motion for dismissal would not.

E. The Dictates of Justice
The criminal justice system is designed to produce that which its title imports: justice. There is no justice, if a person charged with conduct constituting a crime "did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense," but must nevertheless stand trial because the State, having no proof with which to convict, chooses to proceed.