**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1941-19T4
                A-1943-19T4

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

ROCCO J. GIANCARLI, and
ANNA R. SPADACCINI,

      Defendants-Respondents.

_____

Submitted October 6, 2020 – Decided October 21, 2020

Before Judges Yannotti, Mawla, and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Municipal Court Nos. 1503-S-2019-27 and 1503-S-2019-28.

Bradley D. Billhimer, Ocean County Prosecutor's Office, attorney for appellant (William Kyle Meighan, Senior Assistant Prosecutor, of counsel and on the brief).

Michael H. Schreiber, attorney for respondent Rocco J. Giancarli (Michael H. Schreiber and W. Curtis Dowell, on the brief).

W. Curtis Dowell, attorney for Anna R. Spadaccini (W. Curtis Dowell and Michael H. Schreiber, on the brief).

PER CURIAM

The State appeals from a January 7, 2020 Law Division order that dismissed as de minimis summonses charging defendants Rocco J. Giancarli and Anna R. Spadaccini with: 1) possession of fewer than fifty grams of marijuana, N.J.S.A. 2C:35-10(a)(4), and 2) the use, or possession with intent to use, drug paraphernalia, N.J.S.A. 2C:36-2. The State argues the court abused its discretion in granting defendants' motions to dismiss. We agree and reverse.

I.

We glean the following facts from the motion record. Defendants were arrested in Beach Haven at approximately midnight after an officer purportedly observed them on the beach with a lighter. As smoking is prohibited on the beach, the officer approached defendants at which point Giancarli is alleged to have attempted to conceal something behind his leg. Both defendants cooperated with the officer's subsequent questions resulting in Giancarli voluntarily relinquishing a grinder containing marijuana, lighters, a glass smoking device, and 8.36 grams of marijuana.

After the prosecutor failed to respond to Giancarli's counsel's request to voluntarily dismiss the charges, both defendants moved to dismiss the summonses as de minimis violations pursuant to N.J.S.A. 2C:2-11, based in part on the insubstantial amount of marijuana seized. Giancarli's counsel certified that dismissal was also appropriate under the circumstances as defendant was a nineteen-year-old college student, who held a 3.95 GPA and was being considered for an honors program. Counsel also stated that defendant recently interned "with . . . one of the three largest accounting firms in the country."

During oral argument, counsel for Spadaccini attested to similar academic and personal accomplishments of his client. He stated that she is currently a sophomore in college, has earned a 3.56 GPA, was a member of "the Business Leadership Society," and volunteered with various charitable organizations.

In opposing the motion, the State argued that in light of their intelligence, defendants "should have known [marijuana] was illegal, and . . . that if caught, there are consequences." The State also disagreed with defendants' argument that possession of over eight grams of marijuana was a trivial amount and rather than dismissing the charges, urged the court to consider a conditional discharge under N.J.S.A. 2C:36A-1 as defendants were "perfect candidates" for the diversionary program. The State argued a conditional discharge would address

the significance of defendants' illegal actions while not substantially impacting their educational or professional futures.

The State noted that marijuana remained an illegal substance and maintained that dismissal of the charges as de minimis would effectively "wip[e] out [N.J.S.A] 2C:35-10(a)(4)."  The State argued that even under the Attorney General Guidelines,[1] it retained discretion to prosecute possessory marijuana

---

[1] The Attorney General Guidelines referenced by the parties and the court are contained in an August 29, 2018 Memorandum of Guidance (Memorandum). The Memorandum addresses the "scope and appropriate use of prosecutorial discretion by municipal prosecutors handling complaints in municipal court . . . in cases involving marijuana-related offenses."  Att'y Gen., Guidance Regarding Municipal Prosecutors' Discretion in Prosecuting Marijuana and Other Criminal Offenses 1 (Aug. 29, 2018).  According to the Memorandum, because categorical enforcement policies fail to promote a uniform administration of the law it would "exceed the scope of a municipal prosecutor's discretion to adopt a policy or practice of refusing to seek convictions for statutory offenses related to marijuana, notwithstanding the particular facts and applicable law in the individual case . . . ." Id. at 2.  Instead, the Memorandum advises prosecutors to "exercise their prosecutorial discretion in marijuana-related cases as they would in any other case—based on the particular facts and applicable law, and consistent with their ethical obligations to the State, the defendant, and the courts."  Id. at 3.  The Memorandum further explained that a prosecutor "should consider the impact of adverse collateral consequences of a conviction based on the specific circumstances or factors presented by the defendant or elicited by the court" which include the age of the defendant, the nature and circumstances of the arrest, adverse employment consequences, and adverse educational consequences. Id. at 7.

offenses, particularly in situations where the proof of defendant's guilt was significant.

After hearing oral arguments, the court granted defendants' motions. In its oral decision, the court recognized that marijuana remains an illegal substance in New Jersey. The court also expressed concern that defendants "will . . . continue to engage in that behavior, notwithstanding . . . any break that the [c]ourt gives them" and noted that their possession of drug paraphernalia distinguished them from an individual who is simply "hand[ed] . . . a joint, and . . . decide[s] to try it for the first time."

In exercising its discretion to dismiss the charges, however, the court considered "the evolving notion of the use of marijuana" and that defendants "possess[ed] . . . an amount that was purely . . . for personal use." The court also rejected the alternative of a conditional discharge because that remedy could have "particular consequences upon these defendants that would [be] . . . more punitive . . . towards them than what the law was intended to be."

The court issued a supplemental written opinion in which it again expressed its disapproval of defendants' "ill advised" conduct and noted that their actions "as a consumer . . . in the stream of other illegal substance sales, creates a demand for many products that contribute to a lack of safety and health

5

in the community." The court reasoned, however, that "[t]he purpose of the de minimis discretion of the court is to afford otherwise law-abiding individuals—in this case two college students—with the opportunity to be free of a criminal conviction . . . that would stigmatize an otherwise unblemished record." The court also considered the Attorney General Guidelines and found that a conditional discharge "would have a deleterious effect upon their future employment and career opportunities," and that defendants' reporting obligations to their schools "would interfere with internship and other programmatical opportunities . . . [and could result in] removal from prestigious honors programs." This appeal followed.

## II.

An assignment judge is vested with "discretion to dismiss certain charges [on de minimis grounds] to avoid an absurd application of the penal laws." State v. Evans, 340 N.J. Super. 244, 248 (App. Div. 2001). As any such determination is discretionary, we review the decision for an abuse of discretion. See ibid.

We "may find an abuse of discretion when a decision 'rest[s] on an impermissible basis' or was 'based upon a consideration of irrelevant or inappropriate factors.'" State v. S.N., 231 N.J. 497, 515 (2018) (quoting State v. C.W., 449 N.J. Super. 231, 255 (App. Div. 2017)). We "can also discern an

A-1941-19T4

abuse of discretion when the trial court fails to take into consideration all relevant factors and when its decision reflects a clear error in judgment." Ibid. (quoting C.W., 449 N.J. Super. at 255). Similarly, "when the trial court renders a decision based upon a misconception of the law, that decision is not entitled to any particular deference and consequently will be reviewed de novo." Ibid. (quoting C.W., 449 N.J. Super. at 255).

The de minimis statute provides that:

> The assignment judge may dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, [the judge] finds that the defendant's conduct:
>
> a. Was within a customary license or tolerance, neither expressly negated by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;
>
> b. Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
>
> c. Presents such other extenuations that it cannot reasonably be regarded as envisaged by the Legislature in forbidding the offense. The assignment judge shall not dismiss a prosecution under this section without giving the prosecutor notice and an opportunity to be heard. The prosecutor shall have a right to appeal any such dismissal.

[N.J.S.A. 2C:2-11.]

In deciding de minimis motions, the assignment judge must accept as true the allegations made and view the facts in the light most favorable to the State. State v. Zarrilli, 216 N.J. Super. 231, 236 (Law Div. 1987); State v. Brown, 188 N.J. Super. 656, 671 (Law Div. 1983). "When a de minimis motion is addressed it must be assumed that the conduct charged actually occurred." Ibid.

"The purpose of the de minimis statute is to provide assignment judges with discretion similar to that exercised by the police, prosecutors and grand jurors who constantly make decisions as to whether it is appropriate to prosecute under certain circumstances." State v. Wells, 336 N.J. Super. 139, 141 (Law Div. 2000); State v. Hegyi, 185 N.J. Super. 229, 232 (Law Div. 1982). Specifically, the de minimis legislation seeks to avoid injustice "in a case of technical but trivial guilt." State v. Hoffman, 149 N.J. 564, 587 (1997) (quoting State v. Smith, 195 N.J. Super. 468, 477 (Law Div. 1984)). "The concept of triviality or absurdity of a prosecution appears to be the touchstone for dismissal." Brown, 188 N.J. Super. at 674.

To determine triviality, a court should consider all relevant circumstances, though, the most important factor is the risk of harm the defendant's conduct posed to society. See Evans, 340 N.J. Super. at 253 (citing Zarrilli, 216 N.J.

Super. at 239).  The following offenses have been found too trivial to warrant prosecution.  In Zarrilli, a twenty-year-old college student took a single sip of beer at a church event.  216 N.J. Super. at 240.  The court found "the harm to society caused or threatened by [defendant's] conduct was so minimal as not to warrant the condemnation of a conviction."  Ibid.  Likewise, in Smith, the court dismissed a shoplifting offense where a college student stole three pieces of bubble gum, finding it to be a trivial offense.  195 N.J. Super. at 467, 477.

Ultimately, "[t]he goal of a judge in exercising judicial discretion is a just result."  Smith, 195 N.J. Super. at 477.  The statute must be read to permit dismissal "only if society as a whole—'the people'—will be benefited and protected."  Zarrilli, 216 N.J. Super. at 239.

Against the aforementioned standard of review, we conclude the court mistakenly exercised its discretion in dismissing the possessory offenses as de minimis.  These violations of the penal code are neither "trivial" nor would the prosecution of those charges under the circumstances be "absurd."  Brown, 188 N.J. Super. at 674.

While the amount of marijuana allegedly possessed by defendants was not substantial, it was more than sufficient to prosecute them for violating N.J.S.A. 2C:35-10(a)(4).  Indeed, even "minute amounts" of a controlled dangerous

substance (CDS) are sufficient to sustain a conviction.  Wells, 336 N.J. Super. at 145 (citing State v. Humphreys, 54 N.J. 406, 411 (1969)).

In Wells, defendant was charged with possession of 0.34 grams of cocaine.  Id. at 140.  The Law Division denied defendants' application to dismiss the charges under N.J.S.A. 2C:2-11 as de minimis reasoning that the "State has a zero tolerance drug policy which 'refuses to treat as trivial the possession of even the most minuscule amounts of a controlled dangerous substance.'"  Id. at 143 (quoting State v. Sorge, 249 N.J. Super. 144, 148 (Law. Div. 1991)).  The court further explained that based on the intent of the Legislature, "[p]ossession of CDS, no matter what the quantity, does not meet the test for a de minimis infraction pursuant to N.J.S.A. 2C:2-11."  Id. at 146.

Further, defendants alleged criminal conduct is unlike the defendant in Zarrilli, who merely took a sip of beer at a church function.  216 N.J. Super. at 240.  Defendants possessed not only marijuana but related paraphernalia, including a grinder, suggesting their use was not a casual, isolated event.

We also disagree with defendants that the facts before the court bear any resemblance to the trivial crime committed by the defendant in Smith.  It cannot be reasonably disputed that possession of a CDS, along with products to

facilitate its use, is a materially different offense with more profound individual and societal consequences than stealing three pieces of bubble gum.

We acknowledge that based on their counsels' representations, defendants have no criminal records, achieved considerable academic success at their respective colleges, and participated in charitable events in their communities, all facts that are commendable and which the court considered. In dismissing the summons, however, the court appeared to afford those accomplishments, and the effect any conviction would have on their professional careers, undue weight without appropriate support in the record. The court's decision also minimized the State's significant and legitimate interest in prosecuting possessory drug offenses.

The only verified facts in the record are contained in the certification of Giancarli's counsel. We initially note that counsel's certification failed to satisfy Rule 1:6-6 as it clearly was not based on personal knowledge. See Deutsche Bank Nat'l Trust Co. v. Mitchell, 422 N.J. Super. 214, 226 (App. Div. 2011) ("Attorneys in particular should not certify to 'facts within the primary knowledge of their clients.'" (citing Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 1:6-6 (2011))).

More importantly, the certification does not even address the consequences that a conviction would have on either defendant's academic coursework or future employment. The record, therefore, simply does not support the court's conclusion that a conviction, let alone a conditional discharge, "would have a deleterious effect upon [defendants'] future employment" and "interfere with internship and other programmatical opportunities" or result in the potential "removal from prestigious honors programs." It was error for the court to accept counsel's arguments as facts to support its determination.

In addition, we find the record equally devoid of support for the court's finding that a conditional discharge would have "particular consequences" for defendants and would be "more punitive . . . towards them than what the law was intended to be." It was therefore an error in judgment for the court to conclude effectively that defendants are uniquely situated when compared with countless other defendants who face similar possessory marijuana charges.

Finally, it was an abuse of discretion for the court to rely on the alleged "evolving notion of the use of marijuana" and the purported "changing societal attitudes with regard to the possession of small amounts of marijuana for recreational use" to support its decision. Marijuana remains classified as a CDS

in New Jersey and except for prescribed medical uses remains illegal. N.J.S.A. 24:21-5(e)(10); N.J.S.A. 2C:35-2 (defining a CDS); N.J.S.A. 24:6I-1 to -16 (permitting limited use of marijuana under the Jake Honig Compassionate Use Medical Cannabis Act). Further, the Attorney General Guidelines specifically proscribe the State from categorically refusing to prosecute marijuana related offenses. Att'y Gen., Guidance Regarding Municipal Prosecutors' Discretion in Prosecuting Marijuana and Other Criminal Offenses 2-3 (Aug. 29, 2018). Even the proposed constitutional amendment legalizing the personal use of marijuana that is set for consideration by voters on November 3, 2020 would not legalize marijuana use for those under twenty-one, like defendants. S.C.R. 183 (2019) (passed, amendment pending ratification).

In sum, we conclude the court abused its discretion in concluding defendants' possession of marijuana and related paraphernalia were de minimis infractions under N.J.S.A. 2C:2-11. To the extent we have not addressed any of the defendants' arguments, it is because we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Reversed and remanded for further proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-1941-19T4